UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| CSX TRANSPORTATION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case: 3:19-cv-00056-GFVT |
| | ) | |
| V. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| SOUTHERN COAL AND LAND | ) | **ORDER** |
| COMPANY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Sometimes it is unfair and unconstitutional for a defendant to be required to defend a lawsuit in an out of state forum.  If there is not enough contacts with the forum, then the court has no personal jurisdiction and no power to decide the case.  That is precisely the argument made here by Southern Coal and Land Company, Inc.  As explained below, it is correct.  Consequently, Southern Coal's Motion to Dismiss will be **GRANTED**.

**I**

The Plaintiff, CSX Transportation, Inc. is a Virginia corporation that operates as an interstate rail carrier with its principal place of business in Florida.  [R. 1 at ¶¶ 1, 2.]  The Defendant, Southern Coal and Land Company, Inc. (Southern Coal) is an Alabama corporation with its principal place of business in Alabama.  *Id*. at ¶ 3.  Southern Coal also conducts ten to fifteen percent of its business operations in Kentucky, which includes purchasing coal from coal mines and third-party coal marketers.  *Id*. at ¶¶ 8, 9.  However, Southern Coal has no employees in Kentucky and does not direct its business operations from Kentucky.  *Id*. at ¶¶ 5, 6.

CSX and Southern Coal participated in negotiations regarding the transportation of freight from Kentucky to Alabama.  [R. 12 at 3.]  During such negotiations, Southern Coal indicated to CSX that it needed empty railcars delivered to Kentucky for loading.  *Id*.  CSX gave Southern Coal the option to either use CSX owned empty rail cars or lease empty railcars from a third-party, Conrad Yelvington Distributors, Inc. (Conrad).  *Id*.  Southern Coal chose to lease ninety empty railcars from Conrad to load in Kentucky.  *Id*.

After an agreement was entered with Conrad, CSX delivered the empty railcars to Southern Coal's agent, Revelation Energy, LLC, in Kentucky for loading Southern Coal's freight.  *Id*.  Revelation accepted delivery of the railcars and subsequently loaded them.  *Id*.  After the railcars were loaded, CSX transported the loaded railcars from Revelation's facility in Kentucky to Alabama.  *Id*.  Southern Coal was then billed and paid $210,000 for the transportation of the railcars from Kentucky to Alabama.  *Id*.  Thereafter, CSX sent another invoice to Southern Coal for the transportation of the empty railcars by interstate rail to Kentucky in the amount of $144,450.00.  *Id*.  CSX alleges that Southern Coal is the entity responsible for paying these freight charges but Southern Coal refused to pay the amount demanded.  [R.1 at ¶¶ 11, 12.]  CSX also claims that it is owed "finance charges and late fees." *Id*. at ¶ 14.

Due to Southern Coal's failure to pay the freight charges, CSX contends that they contacted Southern Coal to resolve and settle the unpaid balance.  *Id*. at ¶ 17.  CSX alleges that the parties reached a settlement agreement.  *Id*. at ¶ 18.  "Pursuant to the Agreement, [Southern Coal] was to pay CSX" a per rail car fee, plus applicable surcharge."  *Id*. at ¶ 19.  However, Southern Coal disputes that such agreement exists.  [R. 9-1 at 4.]

Based on these facts, CSX charges Southern Coal in Count I of the complaint with "Failure to Pay Interstate Rail Carrier Freight Charges."  [R. 1 at 2.]  In the alternative, CSX alleges in Count II that Southern Coal is in breach of their settlement agreement.  *Id*. at 3. Lastly, in Count III, CSX alleges in the alternative, that Southern Coal be charged with unjust enrichment since CSX conferred a benefit on Southern Coal by providing transportation services. *Id*. at 3–4.  Southern Coal has filed a Motion to Dismiss based on the Court's lack of personal jurisdiction over Southern Coal pursuant to Rule 12(b)(2).  [R. 9-1 at 9.]  Southern Coal also argues that CSX's complaint should be dismissed for improper venue pursuant to Rule 12(b)(3). *Id*. at 11.

## II

## A

The decision as to whether a forum has jurisdiction over a particular defendant "is not an idle or perfunctory inquiry; due process demands that parties have sufficient contacts with the forum state so that it is fair to subject them to jurisdiction."  *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012) (citing *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)).  Federal courts may not exercise personal jurisdiction over a particular defendant "unless courts of the forum state would be authorized to do so by state law," and if such jurisdiction also comports with the United States Constitution's due process requirements. *Id.* (quoting *Int'l Techs. Consultants v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997)).

The due process clause in the Fifth and Fourteenth Amendments to the United States Constitution protects individuals and corporations from being subjected to judgments in a forum with which the individual or corporation has not established any meaningful "contacts, ties, or relations."  *International Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S. Ct. 154, 90 L. Ed. 95

(1945). This provides some measure of predictability to the legal system so that defendants have "fair warning" as to where they could be sued. *Burger King Corp.*, 471 U.S. at 475. In order "to assert specific jurisdiction over an out-of-state defendant who has not consented to suit" in a particular forum, the defendant must have "purposefully directed his activities at residents of the forum," *and* the litigation must result from "alleged injuries that arise out of or relate to those activities." *Id.* at 472–73 (citations omitted).

Ordinarily, the plaintiff bears the burden of establishing by a preponderance of the evidence whether personal jurisdiction exists over a non-resident defendant. *Conn*, 667 F.3d at 711. Where, as here, a defendant has moved to dismiss a case for lack of personal jurisdiction under Rule 12(b)(2), and the court resolves the issue based on written submissions rather than after an evidentiary hearing or discovery, the court must consider the pleadings and submitted affidavits "in the light most favorable to the plaintiff," while also considering "the defendant's undisputed factual assertions." *Id.*; *see also Air Prods. & Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d 544, 549 (6th Cir. 2007); *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 (6th Cir. 2006). The plaintiff, however, must still make "a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

Even when a federal court's subject matter jurisdiction is based on a federal question, as it is in this case, the court must still determine whether personal jurisdiction exists by first examining if the forum state's relevant long-arm statute authorizes jurisdiction. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002); *see also Community Trust Bancorp, Inc. v. Community Trust Financial Corp.*, 692 F.3d 469, 471 (6th Cir. 2012) (quoting *Bird v. Parsons*, 289 F.3d at 871). If so, the court must next determine whether the exercise of that jurisdiction also comports with

federal due process requirements. *Bird v. Parsons*, 289 F.3d at 871; *Air Prods. & Controls, Inc.*, 503 F.3d at 550. In states such as Kentucky, which do not permit exercise of personal jurisdiction to the full extent of constitutional due process, the court must make two determinations — whether jurisdiction satisfies both the state's long-arm statute and constitutional due process. When interpreting the state's long-arm statute, the interpretation of the state's highest court is dispositive. *See Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403 (Fed. Cir. 2009).

## 1

The Kentucky Supreme Court has clarified how Kentucky's long-arm statute is to be applied. *See Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51 (Ky. 2011). The Kentucky Supreme Court has rejected previous caselaw interpreting Kentucky's long-arm statute as extending to the limits of federal due process jurisdictional standards, *id.* at 55, and specifically overruled previous caselaw which skipped over an analysis of the statute itself and proceeded directly to a federal due process analysis. *Id.* at 57; *see also Barker v. Patrick Collins, Inc.*, 2013 U.S. Dist. LEXIS 101036, 2013 WL 3790904, at * (W.D. Ky. July 19, 2013) (referencing *Caesars Riverboat Casino* when stating that the Kentucky Supreme Court "clarified that the long-arm statute is not, *per se*, coextensive with the limits of federal due process").

Now, under current Kentucky law, in order to exercise personal jurisdiction over non-resident defendants, courts must follow a two-step analysis which first determines whether "the cause of action arises from conduct or activity of the defendant that fits into one of the [long-arm] statute's enumerated categories." *Caesars Riverboat Casino*, 336 S.W. 3d at 57. Only when a court has determined that the defendant's activities fit into one of the nine categories listed in KRS 454.210, should the court proceed to the second step of determining whether the

exercise of personal jurisdiction would offend the defendant's federal due process rights. *Id.* at 57; *see, e.g., KFC Corp. v. Wagstaff*, 502 B.R. 484, at *8 (W.D. Ky. 2013) (applying the two-step analysis described in *Caesars Riverboat Casino* by first determining if the cause of action "arises from" conduct or activity fitting into one of the nine enumerated activities in KRS 454.210, and secondly considering whether exercising personal jurisdiction was proper under a federal due process analysis). If, however, the defendant's activities do not fit into one of the statute's enumerated categories, "then *in personam* jurisdiction may not be exercised," and the inquiry ends. *Caesars Riverboat Casino*, 336 S.W. 3d at 57; *see, e.g., Luvata Electrofin, Inc. v. Metal Processing Intern., LP*, 2012 U.S. Dist. LEXIS 128315, 2013 WL 3961226, at *3 (W.D. Ky. Sept. 10, 2012) (explaining that the court will turn to the constitutional due process inquiry only if it first finds that it can exercise personal jurisdiction over defendants under Kentucky's long-arm statute); *Bondurant v. St. Thomas Hosp.*, 366 S.W. 3d 481, 486 (Ky. App. 2011) (citing *Caesars Riverboat Casino*, 336 S.W.3d at 57, in support of court's decision that because personal jurisdiction could not be exercised under KRS 454.210, no analysis of federal due process requirements for exercise of personal jurisdiction was necessary). Thus, there may be situations in which the defendant's activities or contacts with the forum state may be enough to satisfy jurisdiction for purposes of constitutional due process, but still not be permitted by Kentucky's long-arm statute. *Citizens Nat. Bank of Paintsville v. MCNB Bank and Trust Co.*, 2013 U.S. Dist. LEXIS 105913, 2013 WL 3894996, at *2 (E.D. Ky. July 26, 2013).

Moreover, Kentucky's Supreme Court further held that the phrase "arising from" in the long-arm statute should be interpreted to mean that the "cause of action must have originated from, or came into being, as a result of" the defendant's activities which fit into the categories listed in KRS 454.210. *Caesars Riverboat*, 336 S.W. 3d at 58. Thus, even when the defendant's

conduct falls within one of the enumerated categories in the long-arm statute, the plaintiff's claim still must *arise from* that conduct in order for personal jurisdiction to exist. *Id.* at 58–59 ("[T]he wrongful acts of the defendant alleged in the plaintiff's complaint must originate from the actions or activities that form the applicable statutory predicate for assertion of long-arm jurisdiction."); *see also Dierig v. Lees Leisure Indus., Ltd.*, 830 F.Supp.2d 330, 338 (E.D. Ky. 2011) (applying a two-step inquiry as explained in *Caesars Riverboat Casino*, first as to whether one of the nine categories in KRS 454.210 is applicable, and second whether the cause of action actually arises from that particular conduct).

**a**

Plaintiffs argue that CSX's conduct falls within the "transacting any business" category in KRS 454.210(2)(a)(1). [R. 12 at 6.] Few Kentucky courts have assessed what constitutes "transacting business" since the Kentucky Supreme Court's decision in *Caesars*. Even before *Caesars* narrowed the scope of Kentucky's long arm statute, however, Kentucky courts have required a course of direct, affirmative actions within a forum that result in or solicit a business transaction. *E.g., Caesars*, 336 S.W.3d at 58 (holding that casino was "transacting business" within the Commonwealth since it not only engaged in direct marketing activities in Kentucky, but also derived fifty percent of its revenue from Kentucky residents); *Intercargo Ins. Co. v. B. W. Farrell, Inc.*, 89 S.W.3d 422, 427 (Ky. Ct. App. 2002) (holding that, although the parent-subsidiary relationship by itself was not enough to establish personal jurisdiction over an out-of-state subsidiary defendant, the subsidiary had affirmatively availed itself of Kentucky law when it entered an indemnity contract executed in Kentucky); *Ford v. RDI/Caesars Riverboat Casino, LLC*, 503 F. Supp. 2d 839, 841–43 (W.D. Ky. 2007) (finding that the defendant transacted business in Kentucky where roughly half of its customers were from Kentucky, it derived

substantial revenue—in excess of $109 million—from Kentucky residents, and it actively solicited business and engaged in charitable activities in Kentucky).  Isolated actions are insufficient.  *Compare Churchill Downs*, 2014 U.S. Dist. LEXIS 71672 *19–20 (one isolated contract insufficient), *with KFC Corp. v. Wagstaff*, 502 B.R. 484, 2013 U.S. Dist. LEXIS 86758, *27, 2013 WL 3166165 (W.D. Ky. 2013) (numerous long-term contracts with Kentucky-based franchisor were sufficient).

Plaintiffs have not shown that Southern Coal has sufficiently "transacted business" in Kentucky.  Southern Coal is incorporated in Alabama.  [R. 9-1 at 3.]  There is no evidence that Southern Coal has any offices, employees, or physical location of its own here in Kentucky.  *Id*. Even though Southern Coal conducts some business in Kentucky that includes purchasing coal from coal mines and/or third-party coal marketers, Southern Coal does not direct its business operations from Kentucky.  *Id*.  Plaintiffs rely on the fact that Southern Coal purchased coal in Kentucky from a Kentucky corporation and the shipment originated in Kentucky as evidence that Southern Coal conducted business here.  [R. 12 at 6.]  This might appear to establish a contact here in Kentucky with the Kentucky corporation that Southern Coal purchased the coal from, except that the coal producer is not a part of this action and this is only one isolated contact in this matter.

According to Southern Coal, the agreement at issue in the matter is between two out of state parties for the shipment of coal to Alabama, resulting in the current payment dispute.  [R. 13 at 2.]  Southern Coal did not enter or negotiate any transaction with CSX in Kentucky.  *Id*. Rather, Southern Coal acted from its office in Birmingham, Alabama, in connection with such transaction with CSX.  *Id*.  Therefore, the suit is based on a shipping order and an agreement between the parties for shipment of coal to Alabama.  *Id*.  While part of that agreement was

8

performed in Kentucky by an outside third party, that is a stretch to constitute sufficient personal jurisdiction. At best, this relationship and action might constitute one contact, but it is not enough to warrant the exercise of personal jurisdiction over Southern Coal here. Kentucky courts have long held that isolated contracts are insufficient to establish jurisdiction. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000) ("[T]he mere existence of a contract . . . is insufficient to confer personal jurisdiction over [a non-resident defendant]."); *Churchill Downs*, 2014 U.S. Dist. LEXIS 71672 at *18 ("Even before *Caesars* interpreted Kentucky's long-arm statute more conservatively, a contract with a Kentucky company did not alone support the exercise of jurisdiction over a non-resident Defendant.").

Even if these contacts were sufficient, Plaintiffs still could not satisfy the second prong of Kentucky's long arm analysis. When it clarified the scope of the Kentucky Long Arm Statute in *Caesars*, the Kentucky Supreme Court also adopted a fairly narrow interpretation of the "arising out of" prong. *Caesars*, 336 S.W.3d at 57–59. There, the Court concluded that Caesars, a riverboat casino on the Indiana side of the Ohio River, had "transacted business" in Kentucky within the meaning of the long arm statute. *Id.* at 57–58. This was because the company had engaged in direct marketing campaigns through mail, television ads, and billboards in Kentucky, and because it derived over fifty percent of its revenue from Kentucky residents. Nonetheless, the Court held that long arm jurisdiction was not proper because the type of harm experienced by the plaintiff — a personal injury from a slip and fall — did not "arise out of" the casino's marketing activity in Kentucky. *Id.* at 59.

It cannot be said that the present lawsuit "arises out of" Southern Coal's close nexus to Kentucky. This is not an action arising from the sale and shipping agreement with the third-party distributor or seller. It is a contract-based dispute regarding failure of payments under the

contract between the parties in the suit.  "The claim for payment is based on a contract or business relationship initiated, negotiated, and largely carried out between Southern Coal in Alabama and CSX in its principal business locations."  [R. 9-1 at 11.]  The transaction or any agreement upon which the complaint is based was entered into by Southern Coal from its office in Birmingham, Alabama.  *Id.*  In addition, CSX's invoices were sent to Southern Coal in Alabama and Southern Coal made payments from Alabama.  [R. 9-1 at 2.]  CSX made the demands subject to this dispute to Southern Coal's office in Alabama.  *Id.*  The only connection Southern Coal has to Kentucky in this action is that the coal shipped to Southern Coal came from a mine in Lynch, Kentucky, from an unrelated coal producer who is not part of this action.  *Id.* Simply put, the alleged claims by CSX do not originate from, or come into being, as a result of Southern Coal acting in Kentucky and therefore must be dismissed based on the lack of personal jurisdiction.  *Caesars Riverboat Casino*, 336 S.W.3d at 58–59.

## III

Accordingly, for the aforementioned reasons, it is hereby ordered that Defendant Southern Coal & Land Company, Inc.'s Motion to Dismiss for Lack of Jurisdiction **[R. 9]** is **GRANTED**; and this case is **DISMISSED** and **STRICKEN** from the Court's active docket.

This 27th day of May, 2020.

Gregory F. Van Tatenhove
United States District Judge